**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

GEORGE L. MOTHERSHED,
            *Plaintiff-Appellant,*

v.

JUSTICES OF THE SUPREME COURT;
CLERK OF THE SUPREME COURT,
STATE OF ARIZONA; SUPREME
COURT OF ARIZONA DISCIPLINARY
COMMISSION; HEARING OFFICER; BAR
COUNSEL OF ARIZONA STATE BAR
ASSOCIATION; STATE OF OKLAHOMA
JUSTICES OF THE SUPREME COURT;
OKLAHOMA PROFESSIONAL
RESPONSIBILITY TRIBUNAL OF THE
SUPREME COURT, Chief Master;
OKLAHOMA PROFESSIONAL
RESPONSIBILITY TRIBUNAL OF THE
SUPREME COURT, Trial Panel of
February 1, 2002; GENERAL
COUNSEL OF OKLAHOMA BAR
ASSOCIATION; TRIAL COUNSEL OF
OKLAHOMA BAR ASSOCIATION;
RUDOLPH HARGRAVE, Oklahoma
Supreme Chief Justice; MADELINE
HARGRAVE, Wife; ROBERT E.
LAVENDER, Justice, Oklahoma
Supreme Court; MAXINE LAVENDER,
Wife; JOSEPH M. WATT, Vice-Chief
Justice, Oklahoma Supreme Court;

No. 03-16878

D.C. No.
CV-02-02375-RCB

ORDER
AMENDING
OPINION AND
DENYING
PETITION FOR
REHEARING AND
AMENDED
OPINION

CATHY WATT, Wife; RALPH B.
HODGES, Justice, Oklahoma
Supreme Court; JANELLE HODGES,
Wife; MARIAN P. OPALA, Justice,
Oklahoma Supreme Court; JANE
DOE OPALA, Wife; DANIEL J.
BOUDREAU, Justice, Oklahoma
Supreme Court; JANE DOE
BOUDREAU, Wife; YVONNE KAUGER,
Justice, Oklahoma Supreme Court;
NED BASTOW, Husband; HARDY
SUMMERS, Justice, Oklahoma
Supreme Court; MARILYN
SUMMERS, Wife; JAMES
WINCHESTER, Justice, Oklahoma
Supreme Court; SUSAN
WINCHESTER, Wife; J. DANIEL
MORGAN, Chief Master,
Professional Responsibility
Tribunal of the Supreme Court of
the State of Oklahoma; JANE DOE
MORGAN, Wife; J. PATRICK KENT,
Presiding Master, Professional
Responsibility Tribunal of the
Supreme Court of the State of
Oklahoma; JANE DOE KENT, Wife;
ROBERT L. HERT, JR., Member of
Trial Panel of the Professional
Responsibility Tribunal of the
Supreme Court of the State of
Oklahoma; JANE DOE HERT, Wife;

DANA WILLIAMS, Member of Trial Panel of the Professional Responsibility Tribunal of the Supreme Court of the State of Oklahoma; DALE CABINESS, Member of Trial Panel of the Professional Responsibility Tribunal of the Supreme Court of the State of Oklahoma; JANE DOE CABINESS, Wife; DAN MURDOCK, General Counsel, Supreme Court of Oklahoma; JANE DOE MURDOCK, Wife; ALLEN J. WELCH, Bar Counsel, Oklahoma Supreme Court; JANE DOE WELCH, Wife; CHARLES E. JONES, Chief Justice, Arizona Supreme Court; JANE DOE JONES, Wife; RUTH V. MCGREGOR, Vice Chief Justice, Arizona Supreme Court; JOHN DOE MCGREGOR, Husband; STANLEY FELDMAN, Justice, Arizona Supreme Court; JANE DOE FELDMAN, Wife; REBECCA WHITE BERCH, Justice, Arizona Supreme Court; JOHN DOE BERCH, Husband; MICHAEL D. RYAN, Justice, Arizona Supreme Court; JANE DOE RYAN, Wife; PETER CAHILL, Member of the Disciplinary Commission of the Supreme Court of Arizona; JESSICA GIFFORD FUNKHOUSER, Member of the

Disciplinary Commission of the
Supreme Court of Arizona;
CYNTHIA L. CHOATE, Member of
the Disciplinary Commission of
the Supreme Court of Arizona;
BARBARA ATWOOD, Member of the
Disciplinary Commission of the
Supreme Court of Arizona; C.
ALAN BOWMAN, Member of the
Disciplinary Commission of the
Supreme Court of Arizona; CRAIG
MEHRENS, Member of the
Disciplinary Commission of the
Supreme Court of Arizona; STEVEN
G. NELSON, Member of the
Disciplinary Commission of the
Supreme Court of Arizona; LOREN
J. BRAUD, Bar Counsel, Arizona
Supreme Court aka Loren J.
Broad; JANE DOE BRAUD, Wife aka
Jane Doe Broad; JOHN PRESSLEY
TODD, Hearing Office 7X, Arizona
Supreme Court; JANE DOE TODD,
Wife; NOEL K. DESSAINT, Clerk,
Arizona Supreme Court; WILLIAM
M. SPENCE, Attorney; JANE DOE
SPENCE, Wife,
                    *Defendants-Appellees.*

Appeal from the United States District Court
for the District of Arizona
Robert C. Broomfield, District Judge, Presiding

Argued and Submitted
April 15, 2005—San Francisco, California

Filed June 6, 2005
Amended July 21, 2005

Before: Alfred T. Goodwin, Robert R. Beezer, and
Diarmuid F. O'Scannlain, Circuit Judges.

Opinion by Judge O'Scannlain

## COUNSEL

George L. Mothershed, Phoenix, Arizona, argued the cause for the appellant and filed a brief.

LeslieAnn Haacke, Renaud Cook Drury Mesaros, P.A., Phoenix, Arizona, argued the cause for the appellees; Terry Goddard, Attorney General, Phoenix, Arizona, Rosa Mroz, Assistant Attorney General, Phoenix, Arizona, N. Todd McKay, Renaud Cook Drury Mesaros, P.A., Phoenix, Arizona, Charles K. Babb, Assistant Attorney General, Oklahoma City, Oklahoma, and Allen J. Welch, Oklahoma Bar Association, Oklahoma City, Oklahoma, were on the brief.

## ORDER

The opinion filed June 6, 2005, is hereby amended as follows:

Slip Op. at 6334, line 1: After "proceedings," insert the following footnote:

> In *Exxon Mobil*, the Supreme Court clarified that the *Rooker-Feldman* doctrine is only operative where a federal suit is initiated after state court pro-

ceedings have ended. 125 S. Ct. at 1526 ("In both [*Rooker* and *Feldman*], the losing party in state court filed suit in federal court after the state proceedings ended . . . ."). Proceedings end for *Rooker-Feldman* purposes when the state courts finally resolve the issue that the federal court plaintiff seeks to relitigate in a federal forum, even if other issues remain pending at the state level. *See Federacion de Maestros de Puerto Rico v. Junta de Relaciones del Trabajo de Puerto Rico*, 410 F.3d 17, 25 (1st Cir. 2005) ("if the state court proceedings have finally resolved all the federal questions in the litigation, but state law or purely factual questions (whether great or small) remain to be litigated, then the state proceedings have 'ended' within the meaning of *Rooker-Feldman* on the federal questions at issue"). A state supreme court's interlocutory ruling will therefore trigger the *Rooker-Feldman* doctrine's applicability where such ruling constitutes the final determination of an issue. *See id.* at 28 (relying upon *Exxon Mobil* to conclude that *Rooker-Feldman* prohibited a federal district court from deciding an issue already finally resolved by an interlocutory ruling of the Puerto Rico Supreme Court because "the state court proceedings ha[d] ended with regard to the sole federal issue").

Here, state court proceedings ended for *Rooker-Feldman* purposes when the Oklahoma Supreme Court denied Mothershed's request that it issue a writ of mandamus halting the Oklahoma bar disciplinary proceedings against him. That May 2002 state court ruling finally resolved that the disciplinary proceedings complied with Rule 6.7's timing requirements and that Mothershed's due process rights therefore were not violated, which represent the same issues that Mothershed subsequently sought to relitigate in federal district court.

With this amendment, the panel has voted unanimously to deny the petition for rehearing. The petition for rehearing is therefore DENIED. No further petitions for rehearing or petitions for rehearing en banc may be filed.

## OPINION

O'SCANNLAIN, Circuit Judge:

We must decide whether a disbarred attorney may collaterally attack his state bar disciplinary proceedings in federal court.

I

In 1999, the State Bar of Arizona initiated disciplinary proceedings against George L. Mothershed, an attorney who was licensed by the Oklahoma Bar Association but who lived and practiced in Arizona. In response to the disciplinary board's allegation that he had unlawfully practiced law in the State, Mothershed entered a special appearance and moved to dismiss the complaint on the ground that he had not received a summons. The hearing officer denied this motion, and Mothershed subsequently refused to participate further in the disciplinary proceedings. A default judgment was entered against him, and the Supreme Court of Arizona issued an order censuring Mothershed for engaging in the unauthorized practice of law. *See In re Mothershed*, No. SB-01-0076-D, 2001 Ariz. LEXIS 63 (2001).

The Oklahoma Bar Association thereafter initiated its own disciplinary proceedings against Mothershed. A three-member trial panel found that he had unlawfully practiced law in Arizona, and the Supreme Court of Oklahoma entered an order disbarring him. *See State ex rel. Okla. Bar Ass'n v. Mothershed*, 66 P.3d 420, 428 (Okla. 2003).

Mothershed responded by filing suit in the United States District Court for the District of Arizona against the Justices of the Oklahoma Supreme Court, the three members of the Oklahoma disciplinary trial panel, and several officials of the Oklahoma Bar Association (the "Oklahoma Defendants"). He also sued the Justices of the Arizona Supreme Court, the Clerk of the Arizona Supreme Court, the members of the Arizona Supreme Court Disciplinary Commission, the hearing officer in the Arizona disciplinary proceedings, and a state bar staff counsel (the "Arizona Defendants"). Mothershed alleged that the Arizona disciplinary proceedings were invalid because he had not been served with a summons. He contended that the Oklahoma proceedings were likewise defective because his hearing did not occur between thirty and sixty days after appointment of the trial panel, as required by Rule 6.7 of the Oklahoma Rules Governing Disciplinary Proceedings.[1] Based upon these alleged procedural shortcomings, Mothershed asserted a claim under 42 U.S.C. § 1983 for due process and other constitutional violations, as well as state law tort claims for interference with contractual relationships, defamation, abuse of process, malicious prosecution, false light, and intentional infliction of emotional distress.

Mothershed also contended that Arizona Supreme Court Rules 33(d) and 34,[2] which set forth the *pro hac vice* admis-

---

[1]The rule provides:

> The Chief Master or Vice-Chief Master of the Professional Responsibility Tribunal shall notify the respondent and the General Counsel of the appointment and membership of the Trial Panel and of the time and place for hearing, which shall not be less than thirty (30) nor more than sixty (60) days from the date of appointment of the Trial Panel. Extensions of this period may be granted by the Chief Master (or the Vice-Chief Master, in case of the unavailability of the Chief Master) for good cause shown.

[2]Rule 33(d) provides that a member in good standing of the bar of another State may be admitted to appear *pro hac vice* in Arizona upon approval by the court hearing the matter. Rule 34 lists the requirements for admission to the State Bar of Arizona, which include passing the bar examination and being certified by the Committee on Character and Fitness as possessing good moral character.

sion requirements for out-of-state attorneys and the standards for admission to the State Bar of Arizona, violate Arizonans' First Amendment right to consult with an attorney and contravene both the Sherman Antitrust Act, 15 U.S.C. § 1, and the Arizona Uniform State Antitrust Act, ARIZ. REV. STAT. § 44-1402. Mothershed requested damages totaling more than $330 million and an injunction reinstating his membership in the Oklahoma Bar Association and prohibiting the defendants from interfering with his Arizona law practice.

After the defendants moved to dismiss the complaint on various grounds, the district court dismissed the Oklahoma defendants due to the absence of personal jurisdiction. The court later dismissed the claims against the Arizona defendants on the ground that Mothershed was improperly seeking review of the Arizona bar disciplinary proceedings in a lower federal court and that subject matter jurisdiction was therefore absent under the *Rooker-Feldman* doctrine. Mothershed timely appealed.

II

In the face of growing judicial uncertainty about the *Rooker-Feldman* doctrine's parameters, the Supreme Court recently reiterated that its applicability "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. ___, 125 S. Ct. 1517, 1521-22 (2005); *see also Rooker v. Fid. Trust Co.*, 263 U.S. 413, 416 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 486-87 (1983).

We must therefore decide whether Mothershed's claims fall within the *Rooker-Feldman* doctrine's narrowed scope.

A

**[1]** Under *Rooker-Feldman*, lower federal courts are without subject matter jurisdiction to review state court decisions, and state court litigants may therefore only obtain federal review by filing a petition for a writ of certiorari in the Supreme Court of the United States. *See Rooker*, 263 U.S. at 416 (holding that a federal district court lacked subject matter jurisdiction over a suit that effectively sought review of an Indiana state court's decision); *Feldman*, 460 U.S. at 486-87 (holding that a federal district court was without subject matter jurisdiction to entertain a challenge to a decision of the District of Columbia Court of Appeals); *see also* 28 U.S.C. § 1257 ("Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari . . . ."). The doctrine does not, however, prohibit a plaintiff from presenting a generally applicable legal challenge to a state statute in federal court, even if that statute has previously been applied against him in state court litigation.

**[2]** This distinction is well illustrated by the *Feldman* decision itself. There, two aspiring attorneys had petitioned the District of Columbia Court of Appeals for a waiver of a D.C. bar rule requiring applicants to have graduated from an accredited law school. *Feldman*, 460 U.S. at 466. After the Court of Appeals denied their petitions, the plaintiffs filed suit in federal district court challenging both the D.C. bar rule's general constitutionality and the District of Columbia court's decision in their particular cases. *Id.* at 468, 472. The Supreme Court held that the district court possessed subject matter jurisdiction over the former claim but not the latter. *Id.* at 486-87. The Court explained:

> United States district courts . . . have subject-matter jurisdiction over general challenges to state bar rules, promulgated by state courts in nonjudicial proceedings, which do not require review of a final state-

court judgment in a particular case. They do not have jurisdiction, however, over challenges to state-court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional. Review of those decisions may be had only in this Court.

*Id.* at 486; *see also id.* at 482 n.16 (" '[O]rders of a state court relating to the admission, discipline, and disbarment of members of its bar may be reviewed only by the Supreme Court of the United States on certiorari to the state court, and not by means of an original action in a lower federal court.' " (quoting *MacKay v. Nesbett*, 412 F.2d 846, 846 (9th Cir. 1969)) (alteration in original)).

Similarly, in *Craig v. State Bar of California*, 141 F.3d 1353, 1354 (9th Cir. 1998) (per curiam), the plaintiff filed a § 1983 claim in federal court against the California bar after the state supreme court denied review of the California Committee of Bar Examiners' refusal to modify the new-attorney oath to comport with his religious beliefs. We held that subject matter jurisdiction was absent because the plaintiff was seeking review of his individual claim and did not present a general challenge to the California bar's policy. *Id.* We reasoned that a

plaintiff can challenge the state supreme court's denial of bar admission to a particular applicant, the validity of the state's rules governing admission, or both. Lower federal courts lack subject matter jurisdiction over the first type of challenge . . . . In contrast, a general attack on a state's admissions rules may be heard by lower federal courts because a state supreme court acts in a nonjudicial capacity when it promulgates such rules.

*Id.* (citation omitted).

B

**[3]** Mothershed alleges that the Oklahoma defendants denied him due process and committed various state law torts because the Oklahoma bar disciplinary panel did not hold its hearing within the thirty-to-sixty-day time frame required by Rule 6.7 of the Rules Governing Disciplinary Proceedings. Because Mothershed does not contend that Rule 6.7 is systematically disregarded in all attorney disciplinary proceedings or that the rule is itself facially invalid, he is not asserting a "general challenge[ ] to [a] state bar rule[ ]." *Feldman*, 460 U.S. at 486. Rather, Mothershed is alleging that the Oklahoma defendants failed to apply Rule 6.7 during his own state bar disciplinary hearing, which constitutes a "challenge[ ] to [a] state-court decision[ ] in [a] particular case[ ]." *Id.* Under the *Rooker-Feldman* doctrine, the district court lacked subject matter jurisdiction to review Mothershed's Oklahoma disciplinary proceedings,[3] and we therefore affirm the dismissal of

---

[3]In *Exxon Mobil*, the Supreme Court clarified that the *Rooker-Feldman* doctrine is only operative where a federal suit is initiated after state court proceedings have ended. 125 S. Ct. at 1526 ("In both [*Rooker* and *Feldman*], the losing party in state court filed suit in federal court after the state proceedings ended . . . ."). Proceedings end for *Rooker-Feldman* purposes when the state courts finally resolve the issue that the federal court plaintiff seeks to relitigate in a federal forum, even if other issues remain pending at the state level. *See Federacion de Maestros de Puerto Rico v. Junta de Relaciones del Trabajo de Puerto Rico*, 410 F.3d 17, 25 (1st Cir. 2005) ("if the state court proceedings have finally resolved all the federal questions in the litigation, but state law or purely factual questions (whether great or small) remain to be litigated, then the state proceedings have 'ended' within the meaning of *Rooker-Feldman* on the federal questions at issue"). A state supreme court's interlocutory ruling will therefore trigger the *Rooker-Feldman* doctrine's applicability where such ruling constitutes the final determination of an issue. *See id.* at 28 (relying upon *Exxon Mobil* to conclude that *Rooker-Feldman* prohibited a federal district court from deciding an issue already finally resolved by an interlocutory ruling of the Puerto Rico Supreme Court because "the state court proceedings ha[d] ended with regard to the sole federal issue").

Here, state court proceedings ended for *Rooker-Feldman* purposes when the Oklahoma Supreme Court denied Mothershed's request that it issue a

the Oklahoma defendants.[4]

## C

**[4]** Mothershed's claims premised upon the alleged absence of a summons directing him to appear at the Arizona disciplinary hearing are likewise barred by the *Rooker-Feldman* doctrine because these claims constitute a particularized challenge to the Arizona disciplinary proceedings' results. The district court therefore correctly concluded that it lacked subject matter jurisdiction over Mothershed's § 1983 and state law tort claims against the Arizona defendants, all of which are premised upon his failure to receive a summons.

## D

Mothershed also alleges, however, that the admission requirements set forth in Arizona Supreme Court Rules 33(d) and 34 violate Arizonans' First Amendment right to consult an attorney of their choosing and contravene both the Sherman Antitrust Act and the Arizona Uniform State Antitrust Act. These claims pertain to the rules' validity as applied to all attorneys within Arizona (and, indeed, all Arizona resi-

---

writ of mandamus halting the Oklahoma bar disciplinary proceedings against him. That May 2002 state court ruling finally resolved that the disciplinary proceedings complied with Rule 6.7's timing requirements and that Mothershed's due process rights therefore were not violated, which represent the same issues that Mothershed subsequently sought to relitigate in federal district court.

[4]The district court's dismissal of the Oklahoma defendants was premised upon the absence of personal jurisdiction, not subject matter jurisdiction. Where "subject-matter jurisdiction will involve no arduous inquiry," however, "both expedition and sensitivity to state courts' coequal stature should impel the federal court to dispose of that issue first." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 587-88 (1999). Here, the subject matter jurisdiction inquiry involves a straightforward application of the *Rooker-Feldman* doctrine, and we accordingly adhere to the Supreme Court's admonition by relying upon the lack of subject matter jurisdiction to dismiss the Oklahoma defendants.

dents) and thus do not present an individualized challenge to Mothershed's bar disciplinary proceedings. Rather—like the *Feldman* plaintiffs' general constitutional attack on the D.C. bar's accreditation requirement—these claims constitute a general challenge to the rules governing admission to the Arizona bar. *See Hoover v. Ronwin*, 466 U.S. 558, 564-65 (1984) (entertaining a Sherman Act challenge to the Arizona bar exam's grading methodology brought by an attorney who had earlier contested his own exam results in separate Arizona state court proceedings).

**[5]** Because "a general attack on a state's admissions rules may be heard by lower federal courts," *Craig*, 141 F.3d at 1354, the district court erred by concluding that it lacked subject matter jurisdiction over Mothershed's First Amendment and antitrust claims against the Arizona defendants.

### III

Although the district court did indeed possess subject matter jurisdiction over Mothershed's general challenges to the Arizona Supreme Court rules, we "may affirm the district court's dismissal on any ground supported by the record." *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). We first consider Mothershed's antitrust claims and then turn to his First Amendment challenge.

### A

**[6]** In *Parker v. Brown*, 317 U.S. 341, 352 (1943), the Supreme Court held that the Sherman Act does not apply to certain categories of state action. Later decisions have held that one of these categories is the regulation of attorneys by a state supreme court. In *Bates v. State Bar of Arizona*, 433 U.S. 350, 359 (1977), for example, the plaintiffs alleged that an Arizona bar disciplinary rule prohibiting advertising by attorneys violated the Sherman Act. The Court determined that the Arizona Supreme Court—not the state bar—was the

"real party in interest." *Id.* at 361. That court had "adopted the rules," *id.*, and was "the ultimate body wielding the State's power over the practice of law," *id.* at 360. Because the advertising restrictions were "compelled by direction of the State acting as a sovereign," *id.* (internal quotation marks omitted), they were not amenable to a Sherman Act challenge.

Likewise, in *Hoover v. Ronwin*, 466 U.S. at 565, a plaintiff who had failed the Arizona bar exam filed suit against the members of the Committee on Examinations and Admissions alleging that the manner in which they graded the exam violated the Sherman Act. Although the individual members of the Committee were the named defendants, the Court concluded that the suit was barred by *Parker*'s state-action exception because the "Arizona Supreme Court necessarily delegated the administration of the admissions process to the Committee . . . and retained the sole authority to determine who should be admitted to the practice of law in Arizona." *Id.* at 573. Accordingly, the conduct being "challenge[d] was in reality that of the Arizona Supreme Court." *Id.*; *cf. Goldfarb v. Va. State Bar*, 421 U.S. 773, 790 (1975) (holding that a minimum fee schedule enforced by the Virginia state bar did not fall within the *Parker* exception because the fee schedule was not mandated by the Virginia Supreme Court and thus it could not "fairly be said that the State of Virginia through its Supreme Court Rules required the anticompetitive activities").

Here, Mothershed alleges that Arizona Supreme Court Rules 33(d) and 34 violate the Sherman Act. These claims are squarely foreclosed by *Bates* and *Hoover*. Although Mothershed's claim is nominally against certain state bar officials and the Supreme Court Justices in their individual capacities, it is the Supreme Court of Arizona that is the "real party in interest" because the state bar rules that Mothershed is challenging are promulgated by the court in its supervisory role over the practice of law in Arizona. *See In re Shannon*, 876 P.2d 548, 571 (Ariz. 1994) ("the determination of who shall

practice law in Arizona and under what condition is a function placed by the state constitution in this court" (internal quotation marks omitted)). Rules 33(d) and 34 are therefore "compelled by direction of the State acting as a sovereign," *Bates*, 433 U.S. at 360 (internal quotation marks omitted), and are exempt from Sherman Act challenges.

## B

Mothershed also asserts a state antitrust claim under Arizona law. The Arizona Uniform State Antitrust Act "is interpreted in conformity with the federal [antitrust laws]." *Arizona v. Maricopa County Med. Soc'y*, 643 F.2d 553, 554 n.1 (9th Cir. 1980), *rev'd on other grounds*, 457 U.S. 332 (1982); *see also Wedgewood Inv. Corp. v. Int'l Harvester Co.*, 613 P.2d 620, 623 (Ariz. Ct. App. 1979) ("The Arizona legislature clearly intended to strive for uniformity between federal and state antitrust laws."). Indeed, ARIZ. REV. STAT. § 44-1412 explicitly provides, "It is the intent of the legislature that in construing [the Uniform State Antitrust Act], the courts may use as a guide interpretations given by the federal courts to comparable federal antitrust statutes." *Cf. Bunker's Glass Co. v. Pilkington, PLC*, 75 P.3d 99, 102, 106 (Ariz. 2003) (acknowledging the federal antitrust laws' general "importance" to the interpretation of the Uniform State Antitrust Act, while also observing that Arizona courts need not "rigidly follow federal precedent on every issue of antitrust law regardless of whether differing concerns and interests exist in the state and federal systems").

**[7]** No court has previously had occasion to consider whether there exists a state-action exception to the Arizona antitrust laws. Nevertheless, in light of the Arizona legislature's avowed desire to achieve uniformity between the Uniform State Antitrust Act and the federal antitrust laws, the Arizona Supreme Court would most likely follow *Bates* and *Hoover* and hold that its rules governing attorney conduct are not amenable to state law antitrust challenges. *See Assurance*

*Co. of Am. v. Wall & Assocs. LLC of Olympia*, 379 F.3d 557, 560 (9th Cir. 2004) ("[W]hen interpreting state law, federal courts are bound by decisions of the state's highest court. In the absence of such a decision, a federal court must predict how the highest state court would decide the issue . . . ." (internal quotation marks and citation omitted)). Mothershed's state law antitrust claim therefore fails for the same reason as its federal counterpart.

C

Mothershed contends that Arizona Supreme Court Rules 33(d) and 34 violate the First Amendment right of Arizonans to consult with a lawyer of their choosing. Because Mothershed does not allege that he has himself suffered a First Amendment injury, we must first determine whether he has standing to pursue this claim on behalf of other Arizonans.

1

**[8]** A "plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). This limitation is relaxed in the First Amendment context, however, because "when there is a danger of chilling free speech, . . . society's interest in having the statute challenged" may outweigh the prudential considerations that normally counsel against third-party standing. *Sec'y of State v. Joseph H. Munson Co.*, 467 U.S. 947, 956 (1984). A plaintiff's ability to invoke so-called "overbreadth standing" "has nothing to do with whether or not [his] own First Amendment rights are at stake" but instead depends upon whether the plaintiff "satisfies the requirement of 'injury-in-fact,' and whether [he] can be expected satisfactorily to frame the issues in the case." *Id.* at 958; *see also Gospel Missions of Am. v. City of Los Angeles*, 328 F.3d 548, 554 (9th Cir. 2003) ("the requirements of 'overbreadth standing'

[are] injury-in-fact and the ability to frame the issues in the case satisfactorily").

In *Secretary of State v. Joseph H. Munson Co.*, 467 U.S. at 950, for example, a for-profit company that charged charities a fee for raising funds on their behalf brought a First Amendment challenge to a Maryland statute that prevented charities from paying more than 25% of their funds as expenses. Although the plaintiff was not itself a charity and did not allege that its own First Amendment rights were infringed, *id.* at 955, the Court concluded that the company had overbreadth standing to pursue the claim. The Court reasoned that, as a result of the statute, charities were reluctant to contract with the plaintiff because it charged fees in excess of 25% and that the plaintiff's impetus to challenge the statute was therefore consonant with the charities' First Amendment interests. *Id.* at 958 ("The activity sought to be protected is at the heart of the business relationship between Munson and its clients, and Munson's interests in challenging the statute are completely consistent with the First Amendment interests of the charities it represents."); *see also Clark v. City of Lakewood*, 259 F.3d 996, 1010-11 (9th Cir. 2001) (holding that the owner of an adult entertainment establishment had overbreadth standing to pursue a First Amendment challenge against provisions of an ordinance that required the employees of such establishments to obtain a license because the licensing scheme—although not directly applicable to the owner—threatened his business's viability).

**[9]** Here, Mothershed alleges that the prohibitions embodied in Rules 33(d) and 34 have a chilling effect upon Arizonans' purported First Amendment right to consult with out-of-state counsel. Like the plaintiff in *Munson*, Mothershed —though not alleging any First Amendment harm to himself —has incurred a financial injury because these rules prevent him from practicing law in the State. Mothershed's violation of these provisions has also resulted in his being censured by the Arizona Supreme Court. Moreover, Mothershed has a

strong interest in obtaining the invalidation of Rules 33(d) and 34 because he desires to practice law in Arizona without being admitted to the state bar. Mothershed therefore satisfies our requirements for overbreadth standing because he has suffered an injury-in-fact and can be expected to pursue the First Amendment claim vigorously. *See id.* at 1011 (concluding that the owner of the adult entertainment establishment could "satisfactorily frame the issues in the case" because he "ha[d] a vested interest in having the [licensing] Ordinance overturned").

2

Although the First Amendment's applicability in the area of lawyer-client relations is not well-defined, we recognize that —at least as a general matter—the "right to hire and consult an attorney is protected by the First Amendment's guarantee of freedom of speech, association and petition." *Denius v. Dunlap*, 209 F.3d 944, 953 (7th Cir. 2000); *see also United Mine Workers of Am. v. Ill. State Bar Ass'n*, 389 U.S. 217, 221-22 (1967) (holding that a union had a First Amendment right to employ a salaried attorney to represent members pursuing workers' compensation claims); *DeLoach v. Bevers*, 922 F.2d 618, 620 (10th Cir. 1990) ("The right to retain and consult an attorney . . . implicates . . . clearly established First Amendment rights of association and free speech.").

While the Supreme Court has acknowledged that the right to consult with an attorney falls within the First Amendment's purview, the Court has also repeatedly emphasized that "the States have broad power to regulate the practice of law." *Ill. State Bar Ass'n*, 389 U.S. at 222. The Court has explained that the "interest of the States in regulating lawyers is especially great since lawyers are essential to the primary governmental function of administering justice, and have historically been 'officers of the courts.' " *Goldfarb*, 421 U.S. at 792.

**[10]** In order to further its substantial interest in regulating the legal profession, the State of Arizona may institute reason-

able time, place, and manner restrictions on Arizonans' First Amendment right to consult with an attorney. Time, place, and manner regulations are reasonable provided that "the restrictions 'are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information.' " *Kuba v. 1-A Agric. Ass'n*, 387 F.3d 850, 858 (9th Cir. 2004) (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (internal quotation marks omitted)).

**[11]** "The principal inquiry in determining content neutrality . . . is whether the government has adopted a regulation of speech because of disagreement with the message it conveys. Speech restrictions are content-neutral when they can be justified without reference to the content of the regulated speech." *Honolulu Weekly, Inc. v. Harris*, 298 F.3d 1037, 1043 (9th Cir. 2002) (internal quotation marks and citation omitted). Arizona Supreme Court Rules 33(d) and 34 are content-neutral because they impose a generally applicable prohibition on the retention of out-of-state counsel without regard to the subject matter of the representation. (The rules do not, for example, prohibit out-of-state counsel from undertaking only certain categories of representation, such as suits against the State or against tobacco companies).

**[12]** A time, place, and manner regulation is narrowly tailored as long as the substantial governmental interest it serves "would be achieved less effectively absent the regulation and the regulation achieves its ends without . . . significantly restricting a substantial quantity of speech that does not create the same evils." *Galvin v. Hay*, 374 F.3d 739, 753 (9th Cir. 2004) (internal quotation marks omitted; alteration in original). As already noted, the State of Arizona has a significant interest in regulating the practice of law within its boundaries, *see Bates*, 433 U.S. at 361 ("the regulation of the activities of the bar is at the core of the State's power to protect the public"), and Supreme Court Rules 33(d) and 34 further that

interest by ensuring that attorneys practicing in the State are qualified and possess a familiarity with Arizona law. The rules' narrow tailoring is further evidenced by the fact that they do not impose a blanket prohibition on the appearance of out-of-state attorneys in Arizona courts. Rather, they provide that a qualified out-of-state attorney may be admitted *pro hac vice* by an Arizona court.

**[13]** Lastly, Rules 33(d) and 34 leave open ample alternative channels through which Arizonans can obtain legal representation. Notwithstanding the restrictions on out-of-state attorneys, Arizonans have access to legal representation from the thousands of attorneys licensed by the Arizona bar.

**[14]** Because Arizona Supreme Court Rules 33(d) and 34 are reasonable time, place, and manner regulations of Arizonans' First Amendment right to retain and consult with a lawyer, Mothershed's First Amendment claim fails as a matter of law.

IV

For the foregoing reasons, the judgment of the district court is

**AFFIRMED.**