2005 OK 33

**STATE of Oklahoma ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,**

v.

**Sean Patrick DOWNES, Respondent.**

No. SCBD 4885.

Supreme Court of Oklahoma.

May 10, 2005.

Rehearing Granted and as Modified Sept. 19, 2005.

Loraine Dillinder Farabow, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, OK, for Petitioner.

1. RGDP Rule 6, 5 O.S.2001, ch. 1, app. 1–A, provides that formal proceedings involving a lawyer's misconduct be initiated by filing a formal complaint.

2. ORPC Rule 1.1, 5 O.S.2001, ch. 1, app. 3–A, provides:

A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonable necessary for the representation.
The comment to ORPC Rule 1.1 states:
Competent handling of a particular matter includes ... adequate preparation.

3. ORPC Rule 1.3, 5 O.S.2001, ch. 1, app. 3–A, provides:

A lawyer shall act with reasonable diligence and promptness in representing a client.

4. ORPC Rule 1.4, 5 O.S.2001, ch. 1, app. 3–A, provides:

(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.
(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

5. ORPC Rule 1.7(b), 5 O.S.2001, ch. 1, app. 3–A, provides:

A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interest, unless:
(1) the lawyer reasonably believes the representation will not be adversely affected; and
(2) the client consents after consultation. . . .

6. ORPC Rule 1.8(b), 5 O.S.2001, ch. 1, app. 3–A, provides:

A lawyer shall not use information relating to representation of a client to the disadvantage of the client unless the client consents after consul-

Carla Mullins Root, Sapulpa, OK, for Respondent.

TAYLOR, J.

¶1 Complainant, the Oklahoma Bar Association (OBA), alleged four counts of misconduct warranting discipline against respondent attorney, Sean Patrick Downes (Respondent). These proceedings were initiated under rule 6 of the Rules Governing Disciplinary Proceedings (RGDP).[1] The complaint alleged that Respondent had violated Rules 1.1,[2] 1.3,[3] 1.4,[4] 1.7(b),[5] 1.8(b),[6] 1.15,[7] 1.16(a)(1) and (d),[8] 2.1,[9] 3.2,[10] 3.7,[11]

tation, except as permitted or required by Rule 1.6 or Rule 3.3.

7. ORPC Rule 1.15(a), 5 O.S.2001, ch. 1, app. 3–A, provides:

A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in the state where the lawyer's office is situated, or elsewhere with the written consent of the client or third person. . . . Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.

8. ORPC Rule 1.16, 5 O.S.2001, ch. 1, app. 3–A, provides:

(a) Except as stated in paragraph (c), a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if:
(1) the representation will result in violation of the Rules of Professional Conduct or other law;
. . .
(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.

9. ORPC Rule 2.1, 5 O.S.2001, ch. 1, app. 3–A, provides:

In representing a client, a lawyer shall exercise independent professional judgment and render candid advice. In rendering advice, a lawyer may refer not only to law but to other considerations such as moral, economic, social and political factors, that may be relevant to the client's situation.

10. ORPC Rule 3.2, 5 O.S.2001, ch. 1, app. 3–A, provides:

8.1(b),[12] and 8.4(a) and (d)[13] of the Oklahoma Rules of Professional Conduct (ORPC), and Rules 1.3,[14] 1.4,[15] 5.2,[16] and 5.4[17] of the RGDP. At the hearing before the Professional Responsibility Tribunal (PRT), the OBA requested that it be allowed to withdraw its allegations that Respondent violated Rule 1.8(b) of the ORPC and 1.4 of the RGDP.

## I. FACTS

¶ 2 The parties stipulated to some of the facts and to a maximum punishment. Additionally the OBA and Respondent offered testimonial and documentary evidence at the hearing. Respondent was admitted to the practice of law in Oklahoma in 1997. At the time of the hearing, Respondent was a solo practitioner.

## A. COUNTS I AND II—THE MRS. W. AND MS. MUSCARI MATTERS

¶ 3 About February 18, 2003, Mrs. W. retained Respondent to represent her in a divorce proceeding. Through church activities, Mrs. W. had known Respondent about seven years before hiring him to represent her. Mrs. W. graduated from law school in 1988 but is not licensed to practice law in Oklahoma or any other jurisdiction. On February 19, 2003, Respondent filed a divorce petition on behalf of Mrs. W.

¶ 4 On March 16, 2003, Respondent and Mrs. W. met for dinner at which time they

---

A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client.

**11.** ORPC Rule 3.7(a), 5 O.S.2001, ch. 1, app. 3–A, provides:

A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:
(1) the testimony relates to an uncontested issue;
(2) the testimony relates to the nature and value of legal services rendered in the case; or
(3) disqualification of the lawyer would work substantial hardship on the client.

**12.** ORPC Rule 8.1(b), 5 O.S.2001, ch. 1, app. 3–A, provides:

An applicant for admission to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not ... fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this rule does not require disclosure of information otherwise protected by Rule 1.6.

**13.** ORPC Rule 8.4, 5 O.S.2001, ch. 1, app. 3–A, provides:

It is professional misconduct for a lawyer to:
(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
...
(d) engage in conduct that is prejudicial to the administration of justice.

**14.** RGDP Rule 1.3, 5 O.S.2001, ch. 1, app. 1–A, provides:

The commission by any lawyer of any act contrary to prescribed standards of conduct, whether in the course of his professional capacity, or otherwise, which act would reasonably be found to bring discredit upon the legal profession, shall be grounds for disciplinary action, whether or not the act is a felony or misdemeanor, or a crime at all. Conviction in a criminal proceeding is not a condition precedent to the imposition of discipline.

**15.** RGDP Rule 1.4(b), 5 O.S.2001, ch. 1, app. 1–A, provides:

Where money or other property has been entrusted to any attorney for a specific purpose, he must apply it to that purpose. ...

**16.** RGDP Rule 5.2, 5 O.S.2001, ch. 1, app. 1–A, provides:

After making such preliminary investigation as the General Counsel may deem appropriate, the General Counsel shall ... (2) file and serve a copy of the grievance ... upon the lawyer, who shall thereafter make a written response which contains a full and fair disclosure of all the facts and circumstances pertaining to the respondent lawyer's alleged misconduct unless the respondent's refusal to do so is predicated upon expressed constitutional grounds. ... The failure of a lawyer to answer within twenty (20) days after service of the grievance ... or such further time as may be granted by the General Counsel, shall be grounds for discipline.

**17.** RGDP Rule 5.4, 5 O.S.2001, ch. 1, app. 1–A, provides:

Matters contained in grievances submitted to the Association, the Commission or the General Counsel, and statements, oral or written, with respect thereto, shall be privileged. Litigation or the threat of litigation by a respondent lawyer against a person filing a grievance by reason of such filing may be grounds in itself for discipline.

began a romantic relationship. Thereafter, Respondent began a sexual relationship with Mrs. W. which continued during his representation of her. Often Respondent and Mrs. W. conducted their personal relationship, but without physical contact, in front of her minor children who are the subject matter of a custody dispute in the W.'s divorce.

¶ 5 On April 14, 2003, Ms. Muscari, attorney for Mr. W., sent Respondent a second request for admission of facts. Included in this document were requests that Mrs. W. admit that she had an ongoing romantic relationship with Respondent and that she and Respondent were having sexual relations. There were requests for admission of specific encounters between Mrs. W. and Respondent. In the letter accompanying the request for admissions, Ms. Muscari advised she had evidence to substantiate all of the allegations in the request, demanded Respondent withdraw from the case, and demanded substituted counsel conduct Mr. W.'s deposition. Ms. Muscari continued: "I am personally appalled and as you know ethically I am under a duty to report. The OBA and TCBA [Tulsa County Bar Association] have been contacted."

¶ 6 In an April 16, 2003, letter to Ms. Muscari, Respondent refused to withdraw and threatened her with legal action for filing a grievance against him. He wrote: "I caution you that your false reporting of professional misconduct is tantamount to tortious interference with contract and will not be tolerated.... I await receipt of communication from the [OBA] and/or the [TCBA] regarding a report so that I may commence the appropriate civil action against you, your law firm, and if appropriate, Mr. [W.]." During Respondent's representation of Mrs. W., neither of them responded to the request for admissions.

¶ 7 By a letter dated April 23, 2003, Ms. Muscari informed Respondent that she had asked for an *in camera* status conference to address Respondent's relationship with his client and his continued representation of Mrs. W. In response, Respondent sent Ms. Muscari another letter dated April 25th in which he accused her of making false statements and continuing to interfere with the contract between him and Mrs. W. He also suggested Ms. Muscari had a conflict of interest. In an April 28th letter, Ms. Muscari informed Respondent that he was a witness in the divorce proceeding in as much as he acknowledged in his April 16th letter that he had personal knowledge of the incidents addressed in the request for admissions. The status conference was scheduled for May 5, 2003. Four days before the scheduled conference, Respondent filed a motion to withdraw as counsel and a motion to withdraw the status conference. Both motions were unopposed, and both motions were granted.

¶ 8 The stipulations show that Respondent would testify that in his response letter of April 16th, he was merely trying to caution Ms. Muscari against making false statements to the OBA. He testified at the hearing before the PRT that he was trying only to "rein in" Ms. Muscari's misstatement of the facts.

¶ 9 On September 30, 2003, the OBA notified Respondent that Ms. Muscari had filed a grievance against him. In his response dated October 27, 2003, Respondent alleged that Ms. Muscari had herself possibly violated Rule 1.7 of the ORPC, asserted that his behavior was appropriate and timely, disagreed that he had violated Rule 1.7, and denied the alleged facts in the request for admission. He admitted that he withdrew because parading his and Mrs. W.'s personal lives before the trial court might have prejudiced it against his client. He also stated that after receiving Ms. Muscari's letter, he discussed the matter with Mrs. W., reviewed Rule 1.7, and consulted three practicing attorneys. He later testified that the consensus of the attorneys was that Ms. Muscari did not have standing to raise the conflict of interest issue. At the hearing, Respondent admitted he had not contacted the OBA General Counsel's office for advice or asked for an ethics opinion.

## B. COUNT III—THE NEAL GRIEVANCE

¶ 10 About September 24, 2003, Respondent received a $700.00 retainer to handle an adoption matter for Mr. Neal. Respondent expected the costs and fees to be between $1,000.00 and $1,200.00. The $700.00 retain-

er was for the initial filing fee and service and the "upstart time of putting the package together". Respondent told Mr. Neal that he would need to return to the office to sign some paper work.

¶ 11 The $700.00 was deposited into Respondent's operating account. By the end of October, 2003, the balance in Respondent's operating was only $566.47. Respondent's operating account had a negative balance at least once a month starting at the end of November of 2003 through at least March of 2004.

¶ 12 In November, Respondent telephoned and told Mr. Neal that he would call back later and schedule a time for Mr. Neal to sign some paper work. Thereafter, Mr. Neal telephoned Respondent's office several times and left messages asking that Respondent contact him. However, Respondent did not contact Mr. Neal again. Respondent did not do any work on the adoption matter.

¶ 13 In January, 2004, Mr. Neal filed a grievance against Respondent with the OBA. By a letter dated February 11, 2004, the OBA notified Respondent of Mr. Neal's grievance and informed Respondent that he had twenty days within which to reply. Because he did not reply, the OBA sent a certified letter. On March 19, 2004, Respondent signed for the OBA's certified letter dated March 18, 2004, notifying him of the grievance and requiring him to respond within five days or be subpoenaed to testify.

¶ 14 In his response letter dated March 14, 2004, and received on March 19, 2004, Respondent stated that the Neal file had been erroneously placed on inactive status. He also stated he had no doubt that Mr. Neal had made several attempts to communicate with him and he regretted that Mr. Neal's efforts were unsuccessful and had not been met with the appropriate response by his office. He continued no costs or services were ever billed against the retainer. Respondent voluntarily refunded the $700.00 before the hearing before the PRT.

## C. COUNT IV—FAILURE TO RESPOND TO THE SANDERS GRIEVANCE

¶ 15 In September of 2002, Respondent performed some legal work for Leona Sanders and her husband. After Mr. Sanders died, respondent borrowed $10,000.00 from Leona Sanders. After he failed to timely repay the $10,000.00, Leona Sanders filed suit to collect on the note. The docket shows that judgment was entered for Leona Sanders and that the trial court awarded her attorney fees and costs. After the trial court entered judgment for the $10,000.00, it stayed the execution. Respondent satisfied the judgment, and the plaintiff filed a release and satisfaction.

¶ 16 Acting on its own motion, the OBA filed a grievance (Sanders grievance) concerning Respondent's conduct surrounding the loan and the failure to timely repay it. In a letter dated March 25, 2004, the OBA advised Respondent of the Sanders grievance and informed him that he was required to respond within twenty days. Although the letter was not returned to the OBA, Respondent did not respond within the time limit. In a letter dated April 15, 2004, the OBA mailed a certified letter to Respondent advising him to respond within five days or be subpoenaed. Respondent signed the return card on April 16, 2004. However, Respondent did not respond within the five days. On April 20, 2004, a subpoena duces tecum was issued requiring Respondent to appear on May 6 for deposition and produce records. On April 26, the OBA received Respondent's written response dated April 19 and postmarked April 23. At the deposition, Respondent admitted receiving the March 25th letter and being "dilatory in [his] response ... because [he] was in trial for two days yesterday" and had a very high work load.

¶ 17 The OBA General Counsel presented the Sanders grievance to the Professional Responsibility Commission (Commission). The Commission directed no formal disciplinary proceedings be filed on the original Sanders grievance but the pending complaint be amended to include Respondent's failure to timely respond to the OBA's requests for information.

## D. THE HANGER GRIEVANCE

¶ 18 Carol F. Hanger filed a grievance with the OBA. The Commission directed that

no formal disciplinary proceedings be commenced concerning the allegations in the grievance. Therefore, the substance of the grievance is not before this Court. However, we address Respondent's reaction to the grievance because it shows a pattern of conduct.

¶19 Ms. Hanger had retained Respondent to represent her. She initially filed a grievance with the Tulsa County Bar. The TCBA's Professional Responsibility Committee found that Respondent actions, while inappropriate, did not violate the rules governing attorney conduct. Ms. Hanger then filed a grievance with the OBA. In his response to the OBA, Respondent stated that the matter had been addressed by the TCBA and attached the TCBA's letter to Ms. Hanger. Respondent also alleged that Ms. Hanger's current counsel's "actions in connection with this matter are malicious and worthy of investigation and discipline." Because Respondent did not address the issues raised in the grievance, the OBA had to instruct him to comply with Rule 5.2 of the RGDP by providing a full and fair response to the allegations.

## II. STIPULATIONS

¶20 The parties stipulated to the following facts in mitigation of discipline. Respondent has not been previously disciplined and has been cooperative throughout the investigation. Respondent has recognized and has expressed remorse for the harm that he has brought on the legal profession. Respondent's conduct does not appear to have caused harm to any of his client's interests. Respondent's divorce was final in April of 2003. Respondent began his romantic relationship with Mrs. W. before *State ex rel. Oklahoma Bar Ass'n v. Groshon*,[18] and his sexual relationship with his client, Mrs. W., appears to be an isolated incident. Respondent has initiated new office procedures and policies to ensure proper management of his trust and operating account and to avoid incidents similar to those in Counts III and IV. Respondent has made full restitution to Mr. Neal and Mrs. Sanders. Respondent is responsible for the costs of the proceedings.

¶21 The parties submitted that a public censure, with imposition of costs, is the most severe discipline warranted for Respondent's misconduct. Both parties acknowledge that this Court is not bound by the stipulations.

## III. PRT FINDINGS AND RECOMMENDATIONS

¶22 The PRT incorporated the parties' stipulations into its report. Additionally, the PRT found: (1) Respondent engaged in a consensual personal and intimate dating relationship with Mrs. W. during his representation of her, (2) Respondent failed to perform services for a client after accepting a retainer fee, (3) Respondent deposited a retainer in his operating account which later had a balance less than the retainer, (4) Respondent failed to timely respond to the OBA's request in connection with the investigation of a grievance, and (5) Respondent's actions are undisputed evidence of all the rules' violations with which he was charged. The PRT reported that Respondent's testimony indicates he was still unconvinced that his letter to Ms. Muscari violated the ethical rules and Respondent still lacks a thorough understanding of the rules regarding an attorney's escrow account.

¶23 According to the PRT, the Respondent was remorseful but needs to become more familiar with the ORPC and RGDP with respect to client funds and disciplinary matters. The PRT report stated that Respondent's testimony indicates he had made improvements in his office practice designed to address some of the problems raised in this proceeding. The PRT found Respondent violated the ORPC and recommended this Court privately reprimand Respondent, order him to participate in a law office management course, and direct him to participate in an education program on the ORPC and RGDP.

## IV. JURISDICTION OF ATTORNEY DISCIPLINARY MATTERS

¶24 In a bar disciplinary proceeding, this Court exercises exclusive original

**18.** 2003 OK 112, 82 P.3d 99.

jurisdiction.[19] This Court's "authority rests on the constitutionally vested, nondelegable power to regulate the practice of law (which includes the ethics, licensure, and discipline of the State's legal practioners)." [20] This authority is also statutory.[21] In determining whether discipline is warranted and in assessing the appropriate sanction, this Court's review is *de novo*.[22] Neither the PRT's findings of fact, conclusions of law, nor recommendations are binding on this Court.[23] The record is sufficient for this Court's review and supports the stipulation of the facts. However, we do not find that the stipulated mitigating factors are supported in the record and disapprove the recommended discipline.

■ ¶ 25 The PRT's findings and recommendations are not binding on this Court. To keep the investigatory and adjudicatory functions separate in bar disciplinary proceedings, this Court has assigned limited duties to the Oklahoma Bar Association, the Professional Responsibility Commission, and the Professional Responsibility Tribunal.[24] In performing their roles, the OBA, Commission, and PRT act as an official arm of this Court.[25] This Court has assigned the power to investigate grievances to the Commission and the OBA General Counsel.[26] The General Counsel reports to the Commission who has the nondelegable responsibility of determining whether or not formal disciplinary proceedings should be commenced.[27] The General Counsel may delegate "duties imposed upon [it] concerning the general supervision of all disciplinary matters" to other members of the OBA, including "any state or county Bar grievance committee".[28]

¶ 26 Unlike the Commission, another bar member's authority or a state or county bar grievance committee's authority is limited to that delegated by the General Counsel which is in turn is limited to the General Counsel's authority. Neither a bar member, other than acting as part of the Commission, or a state or local bar committee is authorized to determine that a formal complaint should not be initiated or to impose discipline, even by private reprimand.[29] Thus, after a bar member or state or county bar committee investigates a grievance, it should submit its report, together with supporting documentation, to the General Counsel for presentation to the Commission.

¶ 27 In very limited situations, this Court has authorized the Commission to direct the General Counsel to admonish an attorney by letter [30] and to issue private reprimands.[31] In even more limited circumstances and prior to filing formal charges, the General Counsel may refer an attorney charged with misconduct to a diversionary program.[32]

## IV. ANALYSIS

### A. COUNT I

■ ¶ 28 This case is the first in which this Court has been presented with the issue of whether a lawyer who engages in a sexual relationship with a client involved in a divorce proceeding violates the rules governing lawyers' conduct if the client admittedly consented to the relationship. However, this

**19.** *State ex rel. Oklahoma Bar Ass'n v. Groshon,* 2003 OK 112, ¶ 5, 82 P.3d 99, 102.

**20.** *Id.*

**21.** 5 O.S.2001, § 13.

**22.** *State ex rel. Oklahoma Bar Ass'n v. Anderson,* 2005 OK 9, ¶ 15, 109 P.3d 326, 330; *Groshon,* 2003 OK 112 at ¶ 5, 82 P.3d at 102.

**23.** *Anderson,* 2005 OK 9 at ¶ 15; *Groshon,* 2003 OK 112 at ¶ 5, 82 P.3d at 102–03.

**24.** RGDP, (scattered sections of 5 O.S.2001, ch. 1, app. 1–A).

**25.** *State ex rel. Oklahoma Bar Ass'n v. Minter,* 2001 OK 69, ¶ 5, 37 P.3d 763, 768.

**26.** RGDP Rules 2.8, 3.2, 5 O.S.2001, ch. 1, app. 1–A.

**27.** *Id.* at Rules 5.3, 6.1.

**28.** *Id.* at Rule 3.2(i).

**29.** *Id.* at Rules 3.2, 5.3.

**30.** *Id.* at Rule 5.3(c).

**31.** *Id.* at Rule 5.3(d).

**32.** *Id.* at Rule 5.1(c)-(d) (Supp.2003).

Court addressed a similar issue in *Groshon*.[33] In *Groshon*, the client had hired Groshon to represent her in a child custody hearing. Groshon made suggestive comments to and inappropriately touched his client in a sexual manner. Groshon stated that he believed that the sexual advances were invited and welcomed. The evidence was such that Groshon could have reasonably believed that his actions were welcomed.

¶ 29 This Court unequivocally recognized that a lawyer's sexual advances toward a client exploit the attorney-client relationship and constitute professional misconduct which will result in discipline.[34] The client's consent does not excuse the lawyer's actions.[35]

¶ 30 In addition to exploiting the attorney-client relationship, Respondent's sexual relationship with Mrs. W. was adverse to her interest. As shown by Mr. W.'s letter to the OBA, Respondent and Mrs. W.'s sexual relationship added even more hostility to an already acrimonious divorce. It put Respondent in a position as a potential witness. As a consequence of Respondent's sexual relationship with Mrs. W., she had to hire a new attorney. It hindered Respondent's representation of Mrs. W. in that he did not comply with the discovery requests for admissions concerning his relationship with her. Respondent recognized that the relationship was adverse to Mrs. W.'s interest when he withdrew because he thought that knowledge of the relationship might prejudice the trial court against his client. We make these findings even though Mrs. W. did not recognize that she had suffered any harm.

¶ 31 In mitigation, Respondent submits that his sexual relationship with Mrs. W. began before the *Groshon* opinion was rendered. Before *Groshon*, this Court had not held that a lawyer who engages in a consensual sexual relationship with a client is subject to discipline, mitigation as to this factor is unwarranted. As early as 1993, it should

have been clear to Respondent that his behavior would result in violations of ethical rules. In *State ex rel. Oklahoma Bar Ass'n v. Sopher*,[36] this Court, quoting with approval *People v. Zeilinger*,[37] warned of the dangers of an attorney having a sexual relationship with a client undergoing a divorce. The dangers include: (1) destroying the chances of reconciliation, (2) impairing the attorney's independent judgment, and (3) if the property division or the minor children's custody is contested, making the attorney a focal point of the proceedings and a potential witness.[38]

¶ 32 In 1998, OBA Ethics Opinion No. 311 [39] also warned of the risks of sexual relationships between an attorney and a client long before Respondent's relationship with Mrs. W. began. Even though the opinion in *Groshon* was not issued until after Respondent began his sexual relationship with Mrs. W., Respondent should have known that his conduct was prohibited. A minimum of legal research would have put the Respondent on notice of his misconduct. It is troubling that Respondent neglected to make this minimal research effort. It is even more troubling Respondent did not focus on the fact that he was violating the ethics rules but focused on Ms. Muscari's lack of standing to address the issue.

## B. COUNT II

■ ¶ 33 Count II involves Respondent's letter to Ms. Muscari threatening her. Throughout the proceedings, Respondent argued that much of his animosity toward Ms. Muscari, both during the divorce proceeding and the disciplinary proceedings, was a result of her making false allegations in the request for admissions. It is difficult to understand why these allegations were not denied rather than Respondent threatening Ms. Muscari. Unsupported by authority and contrary to the plain language of Rule 5.4 of the RGDP, Respondent justified his threat of litigation based on his belief that the privilege granted

33. 2003 OK 112, 82 P.3d 99.

34. 2003 OK 112 at ¶ 17, 82 P.3d at 106.

35. *Id.*

36. 1993 OK 55, 852 P.2d 707.

37. 814 P.2d 808, 810 (Colo.1991).

38. *Sopher*, 1993 OK 55 at ¶ 12, 852 P.2d at 710.

39. OBA, Ethics Opinion No. 311, at http://www.okbar.org/ethics/311.htm.

in Rule 5.4 is lost if a person knowingly makes a false statement in a grievance.

¶ 34 Rule 5.4 of the RGDP strictly prohibits threatening litigation against a person filing a grievance.[40] Respondent testified that he was not threatening Ms. Muscari but trying to warn her of making false statements to the OBA. We do not find Respondent's testimony credible. First, the letter's language is not a warning; it is an explicit threat against Ms. Muscari for filing a grievance. Second, Respondent exhibited similar behavior when he left verbally abusive, vulgar, threatening messages on an ex-girlfriend's answering machine. When questioned about the messages, he stated that he was angry and "reacting to stimulus from her." It would appear that Respondent has a pattern of threatening behavior when he encounters opposition to his actions.

### C. COUNT III

¶ 35 Respondent's handling of the $700.00 retainer constitutes commingling and conversion. Commingling occurs when the client's funds are combined with the attorney's personal or operating funds.[41] Conversion occurs when a lawyer uses a client's money for "a purpose other than the one for which it was entrusted to the attorney".[42] In this case, the purpose of the money was to pay the costs of filing the adoption and Respondent's initial fee. Because Respondent did no work on the case and did not pay any filing fees, the money remained the client's property. Because the account balance fell below $700.00, Respondent had to have spent the $700.00 on something other than that for which it was entrusted to him.

¶ 36 Respondent testified that, as a matter of course, he deposited advance fee retainers into his operating account. In *State ex rel. Oklahoma Bar Ass'n v. Sheridan*,[43] the Court held that Rule 1.15(a) requires a lawyer to hold an advance fee retainer in a

segregated account until the fee is earned. This includes any amount which an attorney anticipates will be earned within the first month. By his own admission, Respondent failed to properly segregate his advance fee retainers.

### D. COUNT IV

¶ 37 Respondent testified that he did not receive some of the OBA's letters. He continued that if he had received the letters, he would have timely responded. However, he did receive some letters and the ones which he says he did not receive were addressed to the same address and were not returned. We find Respondent's testimony in this regard not credible. Respondent failed to timely respond to the OBA's request for information concerning the Sanders grievance.

### F. MITIGATION

¶ 38 The OBA and Respondent stipulated he had been cooperative; he was sincerely remorseful; his sexual relationship with his client was an isolated, non-predatory incident; his divorce was final in April 2003; and he has implemented new corrective office procedures. We find remorsefulness has minimal value in mitigating Respondent's misconduct. We also find because of the timing of the misconduct, Respondent's divorce has no mitigating value.

### V. VIOLATIONS AND DISCIPLINE

¶ 39 As to Count I, the OBA has proven by clear and convincing evidence that Respondent violated Rules 1.1, 1.7(b), 1.8(b), 2.1, 3.7 and 8.4(a) and (d) of the ORPC and Rule 1.3 of RGDP.[44] As to Count II, the OBA has proven by clear and convincing evidence that Respondent violated Rules 1.1, 1.8(b), and 8.4(a) and (d) of the ORPC and Rules 1.3

---

40. RGDP Rule 5.4, 5 O.S.2001, ch. 1, app. 1–A.

41. *State ex rel. Oklahoma Bar Ass'n v. Arnold,* 2003 OK 31, ¶ 21, 72 P.3d 10, 14.

42. *Id.*

43. 2003 OK 80, 84 P.3d 710.

44. The OBA asked to withdraw a violation of Rule 1.8(b) of the ORPC because it did not think that it could prove the violation by clear-and-convincing evidence. We agree; a violation of Rule 1.8(b) was not proven in these proceedings.

and 5.4 of the RGDP.[45] As to Count III, we find that Respondent not only commingled Mr. Neal's money by depositing it in his operating account but converted Mr. Neal's funds by using them for an unauthorized purpose. We find that Respondent violated Rules 1.3, 1.4, 1.15, 3.2, 8.1(b), and 8.4(a) of the ORPC and Rules 1.3, 1.4(b), and 5.2 of the RGDP.[46] As to Count IV, we find Respondent violated Rules 8.1(b) and 8.4(a) of the ORPC and Rules 1.3 and 5.2 of the RGDP.

¶ 40 For the sexual misconduct in *Groshon*, this Court imposed a public reprimand.[47] More recently in *State ex rel. Oklahoma Bar Ass'n v. Anderson*, this Court suspended a lawyer for one year for taking advantage of his position of trust by engaging in a sexual relationship with a vulnerable client.[48]

¶ 41 In addition to the sexual misconduct, Respondent in the present case was negligent in his representation of a client. For neglect of client matters, this Court has imposed discipline ranging from public censure to disbarment.[49] Generally neglect without affirmative acts of misconduct warrants a public censure.[50]

¶ 42 In *State ex rel. Oklahoma Bar Ass'n v. Wilkins*,[51] the attorney was suspended for six months for commingling and simple conversion and for a conflict of interest. The attorney had been previously disciplined. In *State ex rel. Oklahoma Bar Ass'n v. Mayes*,[52] the attorney was suspended for six months for commingling and simple conversion, for being seriously deficient in managing his practice with respect to supervising non-lawyer employees, and for failing to adequately communicate with his clients.

¶ 43 Failure to respond to an OBA request for information is generally not the subject of public discipline unless accompanied by other misconduct. In *State ex rel. Oklahoma Bar Ass'n v. Briggs*,[53] an attorney was publicly censured for negligently selling stock with his client's consent but without examining the divorce decree and for failing to timely respond to the grievance request. This Court particularly admonished the attorney for his failure to respond to the grievance request.[54]

¶ 44 In *State ex rel. Oklahoma Bar Ass'n*

---

**45.** As Count II, we do not find that the OBA proved that Respondent violated Rules 1.7(b), 1.16(a)(1), and 2.1 of the ORPC as alleged in the complaint.

**46.** The OBA asked to withdraw the allegation that Respondent violated Rule 1.4(b) of the RGDP. We find in the record clear-and-convincing evidence of a violation of Rule 1.4(b) of the RGDP.

**47.** 2003 OK 112 at ¶¶ 16–20, 82 P.3d at 106–07.

**48.** 2005 OK 9 at ¶ 22.

**49.** *State ex rel. Oklahoma Bar Ass'n v. v. Wagener*, 2005 OK 3, 107 P.3d 567 (Previous suspension, practicing law during the suspension, failure to file petition in error and failure to notify client that time for appeal had passed and that appeal had been dismissed warranted six-month suspension.); *State ex rel. Oklahoma Bar Ass'n v. Benefield*, 2002 OK 37, 51 P.3d 1198 (Neglect of client matters, failure to timely refund retainers and return personal papers, failure to properly communicate with clients, and failure to timely respond to grievance requests resulted in sixty-day suspension.); *State ex rel. Oklahoma Bar Ass'n v. v. McGee*, 2002 OK 32, 48 P.3d 787 (Two previous reprimands, neglect of client matters, conflict of interest, and revealing client information

warranted four-month suspension.); *Minter*, 2001 OK 69, 37 P.3d 763 (Three previous disciplines, neglect of client matters, and failure to timely file pleadings with this Court warrant two-year-and-one-day suspension.); *State ex rel. Oklahoma Bar Ass'n v. Hopkins*, 2000 OK 15, 995 P.2d 1153 (Neglect of client matters, failure to cooperate with OBA investigative process, failure to appear for hearings, and failing to demonstrate a comprehension of the seriousness of the misconduct warranted disbarment.); *State ex rel. Oklahoma Bar Ass'n v. Braswell*, 1983 OK 63, 663 P.2d 1228 (Neglect of a client matter without affirmative acts of misconduct warranted public censure.); *State ex rel. Oklahoma Bar Ass'n v. Robertson*, 1980 OK 176, 620 P.2d 382 (Neglect of a client matter and failure to disclose the fact after inquiry resulted in three-month suspension.).

**50.** *State ex rel. Oklahoma Bar Ass'n v. Braswell*, 1983 OK 63, 663 P.2d 1228.

**51.** 1995 OK 59, 898 P.2d 147.

**52.** 1999 OK 9, 977 P.2d 1073.

**53.** 1999 OK 76, 990 P.2d 869.

**54.** *Id.* at ¶ 22, 990 P.2d at 875.

*v. Mothershed,*[55] this Court addressed misconduct in threatening suit for filing a grievance. Mothershed had been disciplined in Arizona for, among other things, making false statements to a tribunal and for the unauthorized practice of law.[56] Mothershed also failed to keep his clients properly informed, had been previously disciplined, failed to respond to grievance requests, and threatened suit against the OBA. This Court determined that Mothershed's multiple acts of misconduct warranted disbarment.

▮ ¶ 45 A combination of ethical violations warrants greater discipline than if only one violation is committed. A consideration in determining the appropriate discipline is Respondent's lack of a sufficient knowledge of rules governing attorney conduct, especially the rules governing handling of client funds and disciplinary proceedings. We conclude, as did the PRT, that this is a concern. There is nothing in the record that indicates he has a proficient knowledge of the rules governing attorney conduct. This lack of knowledge, coupled with Respondent's apathy and attitude toward complying with these rules is particularly troubling. Also troubling is Respondent's pattern of threatening behavior when approached about his possible misconduct. Of similar concern is Respondent's behavior of trying to shift the focus from his misconduct by blaming others. It is appropriate to consider these factors in determining discipline.[57]

¶ 46 The PRT recommended Respondent be privately reprimanded, ordered to participate in a law office management course, and be directed to participate in a program on ethics. The PRT's recommendation of a private reprimand is far too lenient. We reject it. Lawyer rehabilitation is not a function of this Court or the disciplinary process.

▮ ¶ 47 One of this Court's roles is to safeguard the interests of the public, the courts, and the legal profession.[58] In this respect, we must assess Respondent's fitness to practice law.[59] Respondent's attitude and lack of knowledge of acceptable attorney conduct, his misconduct in the matters reflected in the complaint and amended complaint, the harm to his client's interest and to the legal profession, his behavioral pattern of failing to take full responsibility for his actions by blaming others as having a vendetta against him or threatening them when his misconduct is brought to his attention,[60] and his pattern of failing to timely respond to the OBA's grievance requests are considerations in determining discipline. We cannot fulfill our responsibility to safeguard the public and the legal profession without suspending the respondent from the practice of law. We find Respondent should be suspended from the practice of law for one year.

## VI. COSTS

¶ 48 Rule 6.16 of the RGDP provides that where the proceedings result in discipline, the costs shall be surcharged against the disciplined lawyer unless remitted by the Supreme Court. Rules 6.16 further provides that the lawyer must pay the costs within ninety days after this Court's order becomes effective. Respondent has stipulated that he is responsible for the costs of these proceedings. Respondent has not objected to the OBA's application to assess costs in the amount of $1,385.97. Therefore, Respondent is ordered to pay $1,385.97 for the costs of these proceedings within ninety days of the effective date of this opinion.

## VII. CONCLUSION

¶ 49 The respondent, Sean Patrick Downes, is suspended from the practice of law for one year. He is further ordered to pay the costs of this proceeding. RESPON-

55. 2003 OK 34, 66 P.3d 420.

56. *Id.* at ¶ 32, 66 P.3d at 426.

57. *Id.* at ¶ 41, 66 P.2d at 428.

58. *Mayes,* 1999 OK 9 at ¶ 23, 977 P.2d at 1082.

59. *Id.*

60. *State ex rel. Oklahoma Bar Ass'n v. Wolfe,* 1997 OK 47, ¶ 17, 937 P.2d 988, 993; *State ex rel. Oklahoma Bar Ass'n v. Butler,* 1995 OK 89, ¶ 18, 903 P.2d 872, 874.

DENT SUSPENDED; ORDERED TO PAY COSTS.

¶ 50 ALL JUSTICES CONCUR.