STATE OF OKLAHOMA ex rel. OKLAHOMA BAR ASSOCIATION v. DOWNES
2022 OK 65
Case Number: SCBD-7128
Decided: 06/21/2022
As Corrected: June 22, 2022
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2022 OK 65, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

 

 

STATE OF OKLAHOMA ex rel. Oklahoma Bar Association, Complainant,
v.
SEAN PATRICK DOWNES, Respondent.

BAR DISCIPLINE PROCEEDING

¶0 The complainant, Oklahoma Bar Association, charged the respondent, Sean Patrick Downes, with three counts of professional misconduct associated with the attorney's alleged conduct concerning conversion of client funds, lack of communication, and dilatory conduct. The trial panel recommended disbarment, and that costs be imposed. Upon de novo review, we hold that the respondent's conduct warrants disbarment and the payment of costs.

ATTORNEY DISBARRED;
COSTS IMPOSED.

Katherine M. Ogden, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, Oklahoma, for Complainant.

Sheila Naifeh, Tulsa, Oklahoma, for Respondent.

KAUGER, J.:

¶1 The complainant, Oklahoma Bar Association (Bar Association), charged the respondent, Sean Patrick Downes, (respondent/attorney/Downes) with three counts of professional misconduct. The Bar Association alleged that the respondent's actions involved: conversion of client funds, unfairness, lack of communication with clients and the Bar Association, lack of diligence, and lack of adequate advisement to clients.

¶2 The Bar Association argues that this conduct was in violation of Rules 1.1 [Competence],

¶3 After an evidentiary hearing the trial panel recommended disbarment. The recommendation was enhanced because the respondent had previously been suspended from the practice of law for one year in State ex. rel. Okla. Bar Ass'n v. Downes, 2005 OK 33121 P.3d 1058de novo review,

STANDARD OF REVIEW

¶4 In disciplinary matters, this Court possesses exclusive original jurisdiction.

¶5 In considering the record before us, as well as the recommendations of the Professional Responsibility Tribunal, our standard of review is de novo.

FACTS AND ALLEGED MISCONDUCT

¶6 The respondent was admitted to the practice of law in Oklahoma in 1997. He is a solo practitioner in Sapulpa, Oklahoma. In 2005, the Court suspended the respondent for one year from the practice of law for:

1) having a sexual relationship with a client during a divorce representation;
2) sending a threatening letter to the husband's divorce counsel;
3) threatening counsel with litigation for filing a grievance against him;
4) commingling and converting a client's retainer; and
5) failing to respond to the Bar regarding a grievance.

¶7 Although it is not clear precisely how many, the record reflects that the respondent has had other informal complaints previously filed which resulted in diversionary classes relating to client neglect, communication, and law office management, along with at least two letters of admonition. On May 24, 2022, the Court suspended the respondent for noncompliance with mandatory continuing legal education requirements for the year 2021.

COUNT 1 OF MISCONDUCT: THE SHILES/ROBERTSON GRIEVANCE

¶8 The first grievance concerns loan and business transactions with a client. In November of 2008, the respondent borrowed $130,000.00 from his client, Ken Robertson, for the purchase and remodeling of an office building in Sapulpa. The respondent did not make timely payments on the loan. On March 5, 2009, the respondent received a settlement check on Robertson's behalf from the sale of land in Texas, deposited the check in his IOLTA account, and without the client's knowledge, "borrowed" another $80,000.00 from the settlement funds.

¶9 Subsequently, the respondent confessed to the client that he had taken the funds, and in November of 2009, the respondent executed a new loan agreement for $95,000.00 to memorialize the promise to repay the funds taken without permission. The combined amount of funds which the respondent owed the client was now $205,726.96. The respondent again failed to make the required, regular payments.

¶10 The client hired attorney, Jerry Shiles, in an attempt to collect on the funds the respondent owed him. The attempt to collect culminated in a grievance filed on Robertson's behalf in January of 2019, and the client died on February 8, 2020. As of the filing of the complaint on September 21, 2021, the balance due to Robertson was approximately $103,720.88. The evidence and admissions at trial reflects that the respondent converted client funds for his own use, and engaged in multiple business transactions with a client wherein he had a conflict of interest. He also failed to take proper steps to ensure fairness for the client.

COUNT II OF MISCONDUCT: THE LANHAM GRIEVANCE

¶11 David Lanham hired the respondent on September 15, 2018, to expunge a criminal record from thirty years ago. Apparently the respondent filed a motion for expungement on October 9, 2018, but nothing further occurred on the matter. Lanham filed a grievance on April 22, 2019, and alleged that the respondent stopped all communication with him and never completed the expungement.

¶12 The respondent denied the allegations. He also took over two years to provide any supporting documentation to the Bar regarding information concerning the filing of the expungement, and Lanaham's payment of $800.00 for an expungement that never happened. At trial, the primary focus of this grievance was the respondent's failure to cooperate in resolving the matter.

COUNT III: THE GILMORE GRIEVANCE

¶13 Ronald Gilmore hired the respondent in May of 2012 to file a probate after Gilmore's daughter and son-in-law were killed in a car crash. The decedents left behind Gilmore's five-year-old granddaughter. Respondent filed the probate in Payne County on April 3, 2012, but, according to Gilmore, the respondent failed to timely resolve the matter, and failed to communicate with him thereafter. The respondent admitted that the case took too long, but blamed part of the delay on strategy of allowing a foreclosure of the decedent's real property first to protect the assets of the estate. After years of unexplained and unreasonable delay, Gilmore fired the respondent in July of 2019, and hired another lawyer. The matter was then resolved in about a year.

DISCIPLINE IMPOSED

¶14 Discipline is fashioned to coincide with the discipline imposed upon other lawyers for similar acts of professional misconduct.

¶15 This Court is the sole arbiter of bar discipline.

CONCLUSION

¶16 The responsibility of this Court in disciplinary proceedings is not to punish but rather to inquire into and gauge a lawyer's continued fitness to practice law, with a purpose of safeguarding the interest of the public, of the courts, and of the legal profession.

¶17 It is our difficult duty to withdraw the license to practice law if necessary to protect the interest of the public, the legal profession and this tribunal.de novo review of the record, we determine that the clear and convincing evidence warrants the respondent's disbarment, and the payment of $4,357.54 in costs to be paid within 90 days of the date of this opinion.

ATTORNEY DISBARRED;
COSTS IMPOSED.

ALL JUSTICES CONCUR

FOOTNOTES

A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation.

A lawyer shall act with reasonable diligence and promptness in representing a client.

(a) A lawyer shall:

(1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(e), is required by these Rules;
(2) reasonably consult with the client about the means by which the client's objectives are to be accomplished;
(3) keep the client reasonably informed about the status of the matter;
(4) promptly comply with reasonable requests for information; and
(5) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Rules of Professional conduct or other law.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

a) A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless:

(1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner that can be reasonably understood by the client;
(2) the client is advised in writing of the desirability of seeking and is given a reasonable opportunity to seek the advice of independent legal counsel on the transaction; and
(3) the client gives informed consent, in a writing signed by the client, to the essential terms of the transaction and the lawyer's role in the transaction, including whether the lawyer is representing the client in the transaction.

(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in the state where the lawyer's office is situated, or elsewhere with the written consent of the client or third person. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.

(b) A lawyer may deposit the lawyer's own funds in a client trust account for the sole purpose of paying bank service charges on that account but only in an amount necessary for that purpose.

(c) A lawyer shall deposit into a client trust account legal fees and expenses that have been paid in advance, to be withdrawn by the lawyer only as fees are earned or expenses incurred.

(d) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

(e) When in connection with a representation, a lawyer possesses funds or other property in which both the lawyer and another person claim interests, the funds or other property shall be kept separate by the lawyer until there is an accounting and severance of their interests. If a dispute arises concerning their respective interests, the portion in dispute shall be kept separate by the lawyer until the dispute is resolved, and the undisputed portion of the funds shall be promptly distributed.

(f) Where funds or other items of property entrusted to a lawyer have been impressed with a specific purpose as to their use, they shall retain that specific character unless otherwise authorized by a client or third person or prohibited by law. Where funds are impressed with a specific purpose, a lawyer may not subject them to a counterclaim, set off for fees, or subject them to a lien.

A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client.

It is professional misconduct for a lawyer to:

(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

The commission by any lawyer of any act contrary to prescribed standards of conduct, whether in the course of his professional capacity, or otherwise, which act would reasonably be found to bring discredit upon the legal profession, shall be grounds for disciplinary action, whether or not the act is a felony or misdemeanor, or a crime at all. Conviction in a criminal proceeding is not a condition precedent to the imposition of discipline.

After making such preliminary investigation as the General Counsel may deem appropriate, the General Counsel shall either (1) notify the person filing the grievance and the lawyer that the allegations of the grievance are inadequate, incomplete or insufficient to warrant the further attention of the Commission, provided that such action shall be reported to the Commission at its next meeting, or (2) file and serve a copy of the grievance (or, in the case of an investigation instituted on the part of the General Counsel or the Commission without the filing of a signed grievance, a recital of the relevant facts or allegations) upon the lawyer, who shall thereafter make a written response which contains a full and fair disclosure of all the facts and circumstances pertaining to the respondent lawyer's alleged misconduct unless the respondent's refusal to do so is predicated upon expressed constitutional grounds. Deliberate misrepresentation in such response shall itself be grounds for discipline. The failure of a lawyer to answer within twenty (20) days after service of the grievance (or recital of facts or allegations), or such further time as may be granted by the General Counsel, shall be grounds for discipline. The General Counsel shall make such further investigation of the grievance and response as the General Counsel may deem appropriate before taking any action.

State ex rel. Oklahoma Bar Ass'n v. Phillips, 2002 OK 8660 P.3d 1030State ex rel. Oklahoma Bar Ass'n v. Erickson, 2001 OK 6629 P.3d 550State ex rel. Oklahoma Bar Ass'n v. Israel, 2001 OK 4225 P.3d 909State ex rel. Oklahoma Bar Ass'n v. Smolen, 2000 OK 9517 P.3d 456

State ex rel. Oklahoma Bar Ass'n v. Holden, 1995 OK 25895 P.2d 707State ex rel. Oklahoma Bar Ass'n v. McMillian, 1989 OK 16770 P.2d 892

State ex rel. Oklahoma Bar Ass'n v. Downes, 2005 OK 33121 P.3d 1058Tweedy v. Oklahoma Bar Ass'n, 1981 OK 39642 P.2d 262

The Oklahoma Bar Association is an official arm of this Court, when acting for and on behalf of this Court in the performance of its governmental powers and functions.

State ex rel Oklahoma Bar Ass'n v. Downes, see note 12, supra; In Tweedy v. Oklahoma Bar Ass'n, see note 12, supra, we said:

In contrast to the principles which affect administrative agencies, due process is offended when a judicial institution functions both as an organ of enforcement and adjudication. Concentrating the powers of judge and prosecutor in the same person or body poses an unreasonably high risk of compromising the protected and cherished value of judicial detachment and neutrality.

State ex rel. Oklahoma Bar Ass'n v. Erickson, see note 10, supra; State ex rel. Oklahoma Bar Ass'n v. Israel, see note 10, supra.

State ex rel. Oklahoma Bar Ass'n v. Israel, see note 11, supra; State ex rel. Oklahoma Bar Ass'n v. Bolusky, 2001 OK 2623 P.3d 268State ex rel. Oklahoma Bar Ass'n v. Dershem, 2001 OK 721 P.3d 639

State ex rel. Oklahoma Bar Association v. Farrant, 1994 OK 13867 P.2d 1279State ex rel. Oklahoma Bar Association v. Gasaway, 1991 OK 33810 P.2d 826State ex rel. Oklahoma Bar Association v. Braswell, 1983 OK 63663 P.2d 1228

State ex rel. Oklahoma Bar Ass'n v. Wolfe, 1997 OK 47937 P.2d 988State ex rel. Oklahoma Bar Ass'n v. Meek, 1996 OK 119927 P.2d 553State ex rel. Oklahoma Bar Ass'n v. Holden, see note 11, supra.

State ex rel. Oklahoma Bar Association v. Meek, see note 17, supra; State ex rel. Oklahoma Bar Association v. Bolton, 1995 OK 98904 P.2d 597State ex rel. Oklahoma Bar Association v. Donnelly, 1992 OK 164848 P.2d 543State ex rel. Oklahoma Bar Association v. Colston, 1989 OK 74777 P.2d 920

State ex rel. Oklahoma Bar Ass'n v. Patterson, 2001 OK 5128 P.3d 551State ex rel. Oklahoma Bar Ass'n v. Eakin, 1995 OK 106914 P.2d 644State ex rel. Oklahoma Bar Ass'n v. Bolton, see note 18, supra at ¶16.

State ex rel. Oklahoma Bar Ass'n v. Doris, 1999 OK 94991 P.2d 1015State ex rel. Oklahoma Bar Ass'n v. Rozin, 1991 OK 132824 P.2d 1127

State ex rel. Oklahoma Bar Ass'n v. Miskovsky, 1997 OK 55938 P.2d 744

State ex rel. Oklahoma Bar Ass'n v. Southern, 2000 OK 8815 P.3d 1State ex rel. Oklahoma Bar Ass'n v. Taylor, 2000 OK 354 P.3d 1242

State ex rel. Oklahoma Bar Ass'n v. Rennie, 1997 OK 108945 P.2d 494State ex rel. Oklahoma Bar Ass'n v. Butler, 1992 OK 150848 P.2d 540

State ex rel. Oklahoma Bar Ass'n v. Rennie, see note 23, supra; State ex rel. Oklahoma Bar Ass'n v. Wilkins, 1995 OK 59898 P.2d 147

State ex rel. Oklahoma Bar Ass'n v. Taylor, 2000 OK 354 P.3d 1242State ex rel. Oklahoma Bar Ass'n v. Gasaway, 1991 OK 33810 P.2d 826State ex rel. Oklahoma Bar Ass'n v. Brown, 1989 OK 75773 P.2d 751State ex rel. Oklahoma Bar Ass'n v. Geb, 1972 OK 17494 P.2d 299State ex rel. Oklahoma Bar Ass'n v. Scott, 2022 OK 1502 P.3d 1101State ex rel. Oklahoma Bar Ass'n v. Nichols, 2021 OK 28488 P.3d 734State ex rel. Oklahoma Bar Ass'n v. Watkins, 2019 OK 76461 P.3d 174State ex rel. Oklahoma Bar Ass'n v. Parker, 2015 OK 65359 P.3d 184State ex rel. Oklahoma Bar Ass'n v. Passmore, 2011 OK 90264 P.3d 1238State ex rel. Oklahoma Bar Ass'n v. McCoy, 2010 OK 67240 P.3d 675State ex rel. Oklahoma Bar Ass'n v. Gray, 1997 OK 140948 P.2d 1221State ex rel. Oklahoma Bar Ass'n v. Perkins, 1988 OK 65757 P.2d 825

State ex rel. Oklahoma Bar Ass'n v. Bolton, see note 18, supra at ¶15; State ex rel. Oklahoma Bar Ass'n v. Donnelly, see note 18, supra; State ex rel. Oklahoma Bar Ass'n v. Colston, see note 18, supra; State ex rel. Oklahoma Bar Ass'n v. Moss, 1983 OK 104682 P.2d 205

State ex rel. Oklahoma Bar Ass'n v. Holden, see note 11, supra; State ex rel. Oklahoma Bar Ass'n v. Farrant, see note 16, supra; Tweedy v. Oklahoma Bar Ass'n, see note 12, supra.

State ex rel. Oklahoma Bar Ass'n v. Raskin, 1982 OK 39642 P.2d 262